IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN B. GOLDEN ASSOCIATES, INC. d/b/a ARTSKILLS, <br><br> Plaintiff, <br><br> v. <br><br> ROYAL CONSUMER PRODUCTS, LLC, <br><br> Defendant. | Civil Action No. 5:09-cv-03890-JKG |

**DEFENDANT'S *OPPOSITION* TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER[1]**

FISH & RICHARDSON P.C.
Thomas L. Halkowski
222 Delaware Avenue, 17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114
T: 302-652-5070
F: 302-652-0607

Gregory Madera
225 Franklin Street
Boston, MA 02110-2804
T: 617-542-5070
F: 617-542-8906

Attorneys for Defendant
ROYAL CONSUMER PRODUCTS, LLC

DATED: September 8, 2009

---

[1]  This memorandum focuses upon ArtSkills' demand for a temporary restraining order, consistent with the Court's Order during the September 2, 2009, teleconference that the September 9, 2009, hearing in this matter is for the limited purpose of addressing ArtSkills' motion for a temporary restraining order.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     SUMMARY OF ARGUMENT ..........................................................................2

III.    FACTS ................................................................................................................4

IV.     LEGAL STANDARD .........................................................................................6

V.      ARGUMENT .....................................................................................................7

        A.      ArtSkills Will Not Succeed on the Merits of its Claims ........................7

                1.      ArtSkills Failed to Plead and Articulate Its Purported
                        Trade Dress .................................................................................7

                2.      ArtSkills' Lack of Consistent Use Fatally Undermines
                        its  Trade Dress Claims .............................................................10

                3.      Even if ArtSkills Consistently Used the Packaging it
                        Presented to the   Court, it Would Not Be Distinctive
                        Trade Dress ...............................................................................14

                4.      ArtSkills' Claimed Trade Dress Has Not Acquired
                        Secondary Meaning ..................................................................17

                5.      ArtSkills' Purported Trade Dress is Functional .......................18

                6.      There Is No Likelihood of Consumer Confusion .....................19

                        (a)     Similarity of Appearance .............................................20

                        (b)     The Lack of Strength of ArtSkills' Alleged Trade
                                Dress ............................................................................21

                        (c)     Attention Expected of Customers .................................22

                        (d)     Factors 4 & 6: The Length of Time Without
                                Evidence of   Actual Confusion / Evidence of
                                Actual Confusion .........................................................23

                        (e)     Intent of RCP In Adopting The Mark ...........................25

        B.      ArtSkills' Own Actions Demonstrate the Lack of Irreparable
                Harm to ArtSkills .................................................................................26

        C.      The Balance of Harms Decisively Favors RCP ....................................26

        D.      The Public Interest Consideration Weighs in Favor of
                Competition ..........................................................................................27

VI.     CONCLUSION ...............................................................................................28

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Al-Site Corp. v. VSI Int'l, Inc.,*
    174 F.3d 1308, 50 U.S.P.Q.2d 1161 (Fed. Cir. 1999) ...........................................................18

*Allegheny Energy, Inc., v. DQE, Inc.,*
    171 F.3d 153 (3d Cir. 1999)...................................................................................................6

*American Basketball Ass'n v. AMF Voit, Inc.,*
    358 F. Supp. 981 (S.D.N.Y. 1973), *aff'd without op.,*
    487 F.2d 1393 (2d Cir. 1973), *cert. denied,*
    416 U.S. 986 (1974).............................................................................................................16

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240 (3d Cir.1983)..................................................................................................6

*Best Cellars, Inc. v. Wine Made Simple, Inc.,*
    320 F. Supp. 2d 60 (S.D.N.Y. 2003).......................................................................................8

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.,*
    214 F.3d 432 (3d Cir.2000)..................................................................................................17

*Damn I'm Good, Inc. v. Sakowitz, Inc.,*
    514 F. Supp. 1357 (S.D.N.Y. 1981)......................................................................................16

*Duluth News-Tribune v. Mesabi Publ'g Co.,*
    84 F.3d 1093 (8th Cir. 1996) ...............................................................................................23

*FMC Corp. v. Control Solutions, Inc.,*
    369 F. Supp. 2d 539 (E.D. Pa.2005) .................................................................................7, 26

*Freixenet, S.A., et al. v. Admiral Wine & Liquor Co., et al.,*
    731 F.2d 148 (3d Cir.1984)..................................................................................................17

*Heller Inc. v. Design Within Reach, Inc.,*
    2009 WL 2486054, No. 09 Civ. 1909 (JGK)...........................................................................8

*Ideal Toy Corp. v. Plawner Toy Mfr. Corp.,*
    685 F.2d 78 (3d Cir.1982)....................................................................................................17

*Ideal World Marketing, Inc. v. Duracell, Inc.,*
    15 F.Supp.2d 239 (E.D.N.Y.1998) .......................................................................................18

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*In re F.C.F., Inc.,*
    30 U.S.P.Q.2d 1825 (T.T.A.B. 1994) ....................................................................16

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*
    882 F.2d 797 (3d Cir. 1989)...............................................................................6

*Interpace Corp. v. Lapp, Inc.,*
    721 F.2d 460 (3d Cir.1983)..........................................................................19, 20

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
    456 U.S. 844 (1982).......................................................................................17

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
    113 F.3d 373 (2d Cir. 1997)...............................................................................8

*Liko AB v. Rise Lifts, Inc.,*
    2008 WL 2977869, Civil Action No. 07-5302 (E.D. Pa., July 31, 2008.)............................7, 9

*Litton Systems, Inc. v. Whirlpool Corp.,*
    728 F.2d 1423 (Fed. Cir.1984)..........................................................................21

*Major Pool Equipment Corp. v. Ideal Pool Corp.,*
    203 U.S.P.Q. 577 (N.D. Ga. 1979) ...................................................................16

*McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.,*
    24 F.3d 519 (3d Cir. 1994)................................................................................6

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC,*
    511 F.3d 350 (3d Cir. 2007)..............................................................................10

*New Jersey Hosp. Ass'n v. Waldman,*
    73 F.3d 509 (3d Cir.1995)..................................................................................6

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
    269 F.3d 114 (2d Cir. 2001)..............................................................................23

*Qualitex Co. v. Jacobson Prods. Co.,*
    514 U.S. 159 (1995).......................................................................................16

*Ride the Ducks, L.L.C. v. Duck Boat Tours, Inc.,*
    No. 04-5595, 2005 WL 670302 (E.D. Pa. March 21, 2005).........................................6

*Rose Art Indus., Inc. v. Swanson,*
    235 F.3d 165 (3d Cir. 2000)..........................................................................7, 10

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Scott Paper Co. v. Scott's Liquid Gold, Inc.*,
    589 F.2d 1225 (3d Cir.1978)...................................................................................17

*Shire US Inc. v. Barr Laboratories Inc.*
    329 F.3d 348 (3d Cir. 2003)..................................................................................27

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
    532 U.S. 23 (2001).....................................................................................18, 19, 28

*Treat, Inc. v. Desert Beauty*,
    2006 WL 2812770, Civil No. 05-923-PK (D. Or. May 5, 2006) .............................8

*Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*,
    50 F.3d 189 (3d Cir.1995)...................................................................19, 21, 24, 25

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000)............................................................................14, 15, 16, 27

### STATUTES

15 U.S.C. § 1125(a)(3)...............................................................................................19

### OTHER AUTHORITIES

Restatement Third, Unfair Competition § 23, comment c (1995) .................................24

Unfair Competition, § 8.3 (4th ed. 2004) ........................................................... passim

## I.      INTRODUCTION

Defendant Royal Consumer Products, LLC ("RCP") is the leading seller of poster boards. RCP began offering accessory products for use in connection with its poster boards in 2005, after receiving suggestions to do so by various retailers.  RCP introduced its most recent line of poster board accessory products – including the six products accused in this suit – at the 2008 ECRM School and Office Supplies trade show, a major industry sales event.

Plaintiff Steven B. Golden Associates, Inc. d/b/a ArtSkills ("ArtSkills") attended that trade show and admits that almost a year ago its Vice President had already learned that RCP products allegedly "bearing a strong similarity to ArtSkills packaging" were being shown at the ECRM show in 2008.  ArtSkills even contacted one of RCP's sales managers to voice concerns about the ROYAL BRITE products shown at the show in 2008.  But, ArtSkills took no further action and made no effort at all to raise the issue with anyone with relevant authority at RCP's corporate offices.  Several months later RCP began to deliver the accused products to national accounts, including Kmart, and its products were publicly being sold on Kmart's shelves no later than June of 2009.  Although it is typical in the industry to monitor major retail outlets, ArtSkills took no action when RCP's products were on the shelves of stores across the country earlier this year.  Finally, in July of this year, ArtSkills purchased the six RCP accused products at a Kmart store.  Yet, even then, ArtSkills delayed for weeks in pursuing its alleged claims.  When it did act, ArtSkills did not bother to directly contact RCP before filing suit to discuss its concerns. Rather, just days before the 2009 ECRM show, ArtSkills filed an "emergency" motion which seeks a TRO to prevent RCP from showing the six accused products at the 2009 ECRM show that is scheduled to begin on September 13, 2009 – the very same products RCP had already displayed at *last year's* 2008 ECRM show.

ArtSkills acknowledges that the extraordinary relief it seeks would cripple RCP's sales of its accessory products through 2010. Yet, ArtSkills seeks to inflict this severe harm within a matter of days, after nearly a year of inexcusable delay, and after, regrettably, neglecting to fully apprise the Court of its own recent packaging redesigns. Indeed, the facts which ArtSkills withheld in its submissions to the Court fatally undermine ArtSkills' fundamental premise that its products reliably indicate ArtSkills as the source of its products and are eligible for trade dress protection because the "look and feel [of its products] has remained consistent from initial sales in 2005." (Complaint ¶ 26.) In reality, the packaging of a number of the products that ArtSkills relies upon here have undergone material design alterations that render them remarkably different from the versions upon which ArtSkills now bases its claims. For these reasons, as well as those detailed below, ArtSkills has failed to satisfy multiple legal requirements and its claim for extraordinary relief should be denied.

## II.     SUMMARY OF ARGUMENT

ArtSkills' claim for trade dress infringement fails for at least five reasons. *First*, ArtSkills has not defined its alleged trade dress of its product line with particularity as is required under the law. This threshold requirement is especially stringent here, because ArtSkills claims to have protectable trade dress in an entire line of products. Understanding the components that ArtSkills claims define its trade dress is fundamental to determining whether such trade dress is protectable. Identifying the components that ArtSkills alleges constitute its trade dress also takes on added importance, because the products ArtSkills showed the Court as embodying that trade dress differ materially from various versions of ArtSkills' re-designed products that are now on the market and which were not disclosed to the Court by ArtSkills in its moving papers.

*Second*, ArtSkills has not established that its alleged trade dress is distinctive. ArtSkills' product packaging is constantly changing – contrary to ArtSkills' assertions that it has "remained

consistent."  Indeed, among its substantive changes, Artskills apparently began selling plastic stencils after RCP switched from offering flattened versions of its paper board stencils to offering folded-up versions of its stencils made from transparent blue plastic. ArtSkills' use of different packaging, and its various and changing manners in which its displays its products in its packaging, undermines any suggestion that any particular version of ArtSkills' packaging serves a source-identifying function (i.e., is distinctive).

*Third*, ArtSkills relies on the underlying design of the products themselves as a "dominant" component of its alleged trade dress.  Yet, ArtSkills' products are not protected by patent, copyright, or any other intellectual property right.  Others, including RCP, are free to sell these products in competition with ArtSkills; indeed, the law encourages such head-to-head competition.  Because ArtSkills relies upon its display of the product itself as the prominent basis for its alleged trade dress, ArtSkills must establish that its products' ***configurations*** are so unique they are entitled to protection under the much stricter standards governing product configuration, as opposed to the standards concerning merely the packaging for the product.  ArtSkills does not come close to satisfying this heightened standard.

*Fourth*, assuming *arguendo* that ArtSkills somehow possessed a defined protectable trade dress, no confusion exists between the two sets of six competing products, and certainly not in the sales context Artskills seeks to prevent in this motion.  The extensive face-to-face meetings that occur during the review process with retail institutions insures that these professional buyers know exactly with whom they are dealing and are not confused as to the source of the products they are purchasing.  Moreover, RCP's products are prominently marked with RCP's well-known and federally registered ROYAL BRITES trademark. Yet, ArtSkills seeks a TRO to

prevent RCP from participating in these sales meetings, and even acknowledges that imposing such restrictions would have a draconian impact on RCP's sales for the entirety of 2010.

*Finally*, ArtSkills' inexcusable delay precludes it from obtaining any "emergency" equitable relief.  ArtSkills created this so-called emergency by waiting until days before the most important industry sales event when, in fact, it has been aware of RCP's accused products for a year, the products have been publicly on sale since at least June, and ArtSkills admits it has had the particular six accused products in its direct possession no later than July 31st.  ArtSkills' timing in filing this suit suggests a competitive tactic to find a way to preclude RCP from any reasonable participation at its most important sales event of the year – an event that ArtSkills, for reasons of its own, has chosen not to attend.

## III.   FACTS

RCP is a leading supplier of office products for the consumer and business markets, and the country's number one seller of poster boards.  (Repecki Decl. ¶ 2.)  RCP sells a variety of products such as printing paper, poster boards, poster board accessories, and markers under its well-known and federally registered ROYAL BRITES trademark. (*Id*.)  All of RCP's poster board accessory products prominently feature RCP's ROYAL BRITES® trademark—on the front as well as on the back of the product packaging.  (Repecki Decl. ¶ 19.) RCP's  trade name, mailing address, website, and phone number also are prominently featured on all of RCP's ROYAL BRITES® poster board accessory products.  (*Id*.)

In early 2005, RCP launched a line of poster board accessories to complement its leading ROYAL BRITES® poster board line.  (Repecki Decl. ¶ 9.)  The RCP poster board accessories line initially included neon repositionable adhesive letters, holographic repositionable adhesive letters, neon repositionable adhesive shapes, holographic repositionable adhesive shapes, and

other repositionable adhesive shapes, borders, and theme products.  (*Id*).  In early 2008, RCP further developed and expanded its poster board accessory line.  RCP developed new poster board accessories based, in part, upon suggestions from various retailers.  (Repecki Decl., ¶ 10.)[2]

When designing RCP's new poster board accessories and the packaging therefor, RCP's goal was to clearly designate its products as ROYAL BRITES® products given the strong brand identity of ROYAL BRITES® products, including RCP's popular poster boards with which the accessories are used.  (Demott Decl. ¶ 2; Demsky Decl. ¶ 19.)

In September 2008, RCP introduced and displayed its new poster board accessory product line, including the six products at issue in this suit, at the 2008 ECRM School and Office Supplies sales show.  (Repecki Decl. ¶ 12.)  RCP also discussed this new product line with many retail buyers prior to the show.  (*Id.*)  It is believed that ArtSkills was at the same show.  Indeed, ArtSkills' own papers allege that it was purportedly told there were "Royal Brites products bearing a strong similarity to ArtSkills packaging at the show."  (Demsky Decl. ¶ 14.)

RCP has participated in the ECRM sales show for many years, as it is vital to the company's sales success for the following year.  (Repecki Decl. ¶ 8.)  At the ECRM show, manufacturers such as RCP are guaranteed 20-minute meetings with the buyers for every retailer in attendance.  (Repecki Decl., ¶ 7.)   Without the opportunity to present its products at the ECRM sales show, RCP would not have been able to meet with many of the retailers with which it presently works.  (Repecki Decl., ¶ 8.)

Retailers make their purchasing decisions, based on the meetings held at the ECRM show, for the following year.  (Repecki Decl., ¶ 7.)  RCP invests tens of thousands of dollars in

---

[2]  It is worth noting that when RCP switched from offering paper board stencils to transparent blue plastic stencils, ArtSkills apparently followed RCP's lead and also began selling plastic stencils.  (Demott Decl. ¶ 3.)

the ECRM show each year.  (Repecki Decl. ¶ 8.)  Every major retailer in the country, with the exception of Wal-Mart and Sam's Club, attends the ECRM sales show. (*Id.*)

Poster board accessories are a niche product.  (Repecki Decl. ¶ 4.)  It is customary for retailers to offer a poster board accessory product line of one company (*Id.*)  Generally speaking, the sales process of the parties industry involves many extensive meetings. To get products placed in a store, generally involves several face-to-face meetings where RCP explains the various features and advantages of its products to retail buyers.  (Repecki Decl. ¶ 6.)  Given the extensive work required to make a sale, RCP's retail customers are clearly advised during these meetings that RCP is the source of the ROYAL BRITES® poster board accessories that RCP is selling. (*Id.*)

## IV.  LEGAL STANDARD

The grant of injunctive relief "is an 'extraordinary remedy, which should be granted only in limited circumstances.'"  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir. 1989).  The standard for a temporary restraining order is the same as that for a preliminary injunction. *Ride the Ducks, L.L.C. v. Duck Boat Tours, Inc.*, No. 04-5595, 2005 WL 670302, *4 (E.D. Pa. March 21, 2005).  The decision whether to grant such extraordinary injunctive relief is "within the discretion of the district court." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1242 (3d Cir.1983).  When deciding whether to grant such relief, the Court must weigh the following four factors:  "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." *Allegheny Energy, Inc., v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999).

An injunction shall issue <u>only</u> if ArtSkills produces evidence sufficient to convince the Court that all four factors favor such drastic relief.   *New Jersey Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir.1995).   If the Court finds that either or both of the fundamental preliminary injunction requirements—a likelihood of success on the merits and irreparable harm—are absent, the Court <u>cannot</u> issue an injunction. *See McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).  "An unreasonable delay in seeking an injunction negates the presumption of irreparable harm." *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 582 (E.D. Pa.2005).

## V.   ARGUMENT

### A.   ArtSkills Will Not Succeed on the Merits of its Claims

To prove a claim of trade dress infringement, ArtSkills must establish: "'[1] the trade dress is distinctive, either because it is inherently distinctive or because it has acquired secondary meaning; [2] the trade dress is nonfunctional; and [3] the defendant's use of plaintiff's trade dress is likely to cause consumer confusion.'" *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir. 2000).

### 1.   ArtSkills Failed to Plead and Articulate Its Purported Trade Dress

Before assessing whether the alleged trade dress is distinctive, it is critical that ArtSkills first define the discrete elements of its alleged trade dress so an evaluation of distinctiveness can be conducted:

> [T]here is no reason why the plaintiff cannot define a list of elements consisting of less than the totality of features. Whatever may be claimed as the combination of elements making up the product or its packaging and presentation, in the author's opinion, it will not do to solely identify in litigation such a combination as "the trade dress." Rather, the discrete elements which make up that combination should be separated out and identified in a list. Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement.

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 8.3 (4th ed. 2004) (hereinafter, "McCarthy"); *see also Liko AB v. Rise Lifts, Inc.*, 2008 WL 2977869, Civil Action No. 07-5302 at *6-7 (E.D. Pa., July 31, 2008.) ("[M]ere attachment of photographs is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue.…Plaintiff is directed to plead with greater clarity the trade dress at issue.")

> As explained by the Second Circuit Court of Appeals:

> [F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997).  *See also Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003) ("[T]he plaintiff must precisely articulate the specific elements that comprise its distinct trade dress, so that courts can evaluate claims of infringement and fashion relief that is appropriately tailored to the distinctive combination of elements that merit protection."); *Heller Inc. v. Design Within Reach, Inc.*, 2009 WL 2486054, No. 09 Civ. 1909 (JGK) at * 6 (S.D.N.Y. August 14, 2009) ("[P]laintiff must specify not just which features are distinctive, but also how they are distinctive. 'Laudatory' descriptions without specificity fail to indicate what unique combination of features makes the trade dress likely to be perceived by consumer as bearing the stamp of their maker.…[I]mages alone do not satisfy the plaintiff's obligation to articulate the distinctive features of the trade dress.") (internal quotations and citations omitted); *Treat, Inc. v. Desert*

*Beauty*, 2006 WL 2812770, Civil No. 05-923-PK at *15 (D. Or. May 5, 2006) (Plaintiff's "complaint alleges that it has developed a line of products that 'contain unique and distinctive design elements, including but not limited to the food-based scents of the products.' [Defendant] argues, and the court agrees, that this allegation is insufficient.  The discreet elements that make up the alleged trade dress must be separated out and identified in a list.").

 ArtSkills' repeated vague references to its trade dress make it impossible for RCP to adequately defend itself, or for this Court to grant any meaningful relief.[3]  ArtSkills generally seeks to protect "the appearance of the packages that the products come in, as well as the way in which the products are displayed in the package."  (Pl. Mem. p. 12.)  ArtSkills describes its claimed trade dress in its Complaint, as being the "commercial impression generated by the packaging."  (Complaint, ¶¶ 20-25.)  ArtSkills likewise vaguely describes its purported trade dress in its Memorandum of Law and supporting declaration:  "the look and feel, size, coloration, and presentation" (Pl. Mem. p. 3); "unique packaging layout and design" (Pl. Mem. p. 4); "packaging and product layout" (Pl. Mem. p. 5); "shape and size of packaging, the colors, shapes and symbols on the packaging and the location and content of the various product messages on the packaging" (Pl. Mem. p.9); the "arrangement of the product within the packaging" (Pl. Mem. p. 9); "unique and memorable" (Demsky Decl., ¶ 8); and "[t]he shape and size of the packaging, colors, shapes and symbols on the packaging, and the location and content of the various product

---

[3]  "In some cases, neither the plaintiff nor the court defines exactly what the trade dress consists of, except for vague and indeterminate references to the 'overall appearance' or 'look' of plaintiff's packaging….This may well leave the defendant uncertain as to what to do to avoid a charge of contempt and create dangers of anti-competitive overprotection. In addition, such imprecision and vagueness is unfair to the party accused of infringement who is forced to defend against an amorphous claim of exclusivity which is of uncertain and indeterminate dimensions. The law of trade dress should not be used as an anti-competitive weapon based upon undefined claims of 'trade dress.'"  McCarthy  § 8.3.

messages." (*Id.*)  Such vague descriptions fail to meet the threshold pleading requirements and are improper under governing law.

Moreover, the mere attachment of photos as exhibits to the Complaint is not sufficient to provide notice of what elements are alleged to constitute the trade dress at issue.  *Liko AB v. Rise Lifts, Inc.*, 2008 WL 2977869 at *6-7 (requiring plaintiff to amend its complaint).  Given the failure of ArtSkills to meet the threshold requirement for asserting a claim for trade dress infringement, ArtSkills cannot establish that it is likely to succeed on the merits of its trade dress infringement claim.

### 2.   ArtSkills' Lack of Consistent Use Fatally Undermines its Trade Dress Claims

"Trade dress refers to the design or packaging of a product which serves to identify the product's source."  *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).  "When a plaintiff seeking trade dress protection cannot show that its packages have a consistent overall look, the trade dress that the defendant is allegedly infringing does not exist,' and the defendant must prevail."  *Rose Art Industries, Inc.*, 235 F.3d at 175.  Because ArtSkills is alleging trade dress infringement of the packaging of its "poster board accessories product line" (Pl. Mem. p. 3), ArtSkills must prove that its product line has a "consistent overall look."  *Rose Art Industries, Inc.*, 235 F.3d at 173 ("We will require this, more stringent test before the non-functionality/distinctiveness/likelihood of confusion test is applied. A plaintiff, seeking protection for a series or line of products, must first demonstrate that the series or line has a recognizable and consistent overall look.")

The six products selected from ArtSkills' poster board accessory product line do not have a consistent overall look.  For example, several of the products within ArtSkills' product line feature a star in the lower left hand corner (Complaint, Exs. 2-5, 7(a) (b)), while others feature a

swirl (Complaint, Exs. 1, 7(a)(b)), while another features a circle (McCallion Dec. Ex. A-C;"

Madera Decl., Ex. 1), while still others do not depict anything at all (Complaint, Ex. 6).  Some

include the ArtSkills designation, while others merely have the phrase "Lets Make A Poster."

(Complaint, Exs. 2, 4, 5.)

Indeed, even with respect to each of the particular products at issue, ArtSkills cannot

establish that they have been sold with a consistent look.  ArtSkills' packaging is continually

changing such that no particular packaging design can be considered to be distinctive – much

less that it reliably identifies ArtSkills as the source of the product.  To illustrate:[4]

- The "Quick Letters" ArtSkills submitted to the Court differs materially from the "Quick
  Letters" available in the market.   The identical product is ***not*** even featured on Artskills'
  website.[5]

| ArtSkills' Complaint (Ex. 2) & Memoranda | Wal-Mart, New Mexico (Madera Decl., Ex. A) | Target, Minneapolis (Leviton Decl., Ex. A.) | Wal-Mart, Pennsylvania (Halkowski Decl., Ex. A) |
| --- | --- | --- | --- |
|  | | | |

---

[4]   ArtSkills' "Eye Catchers" product was not available in the stores visited.

[5]   Plaintiff includes "Neon Quick Letter Pads,"  "Black Quick Letter Pads," "Holographic Quick
Letters," and "Jumbo Quick Letters" on its website but not its "Quick Letters."  (McCallion
Decl. ¶ 6.)

- The "**Stencil Kit**" ArtSkills submitted to the Court differs materially from the "Stencil Kit" featured on ArtSkills' website and the ArtSkills "Stencil Kit" available on the market.

| ArtSkills' Complaint (Ex. 3) & Memoranda | Website (McCallion Decl. Ex. B) | Wal-Mart New Mexico, Wal-Mart Minneapolis[6] | Wal-Mart Philadelphia (Halkowski Decl., Ex. A ) |
|---|---|---|---|
| | | | |



- The "**Vinyl Letters**" ArtSkills submitted to the Court differs materially from the "Vinyl Letters" featured on ArtSkills' website and available in the market.

| ArtSkills' Complaint (Ex. 4) & Memoranda | Website (McCallion Decl. Ex. B) | Wal-Mart New Mexico, Wal-Mart Minneapolis, and Target Minneapolis[7] |
|---|---|---|
| | | |



---

[6]  Madera Decl., Ex A; Leviton Decl., Ex. A.  This product was also available at the Wal-Mart in Pennsylvania.  Halkowski Decl. Ex. A.

[7]  Madera Decl., Ex. A; McCracken Decl., Ex. A; Leviton Decl., Ex. A.

- Likewise, ArtSkills' "Poster Carrier," as it is currently featured on ArtSkills' website looks different from the version of the "Poster Carrier" packaging Artskills submitted to the Court. *E.g*., ArtSkills' current "Poster Carrier" packaging set forth on its website, features the words "Reusable Bag" in the top right corner, and "Waterproof Zipper!" and "Reinforced Handle!" on the bottom, features a blue poster board bag rather than a clear bag, and features ArtSkills' trademark "ArtSkills" whereas the packaging submitted by ArtSkills to this Court does not.[8]

| Artskills' Complaint (Ex. 5) & Memoranda | Website (McCallion Decl. Ex. C) |
|---|---|
|  | |

- The "Poster Markers" ArtSkills submitted to the Court differs materially from the "Poster Markers" available in the market.   The identical product is *not* even featured on Artskills' website.[9]

---

[8] "Poster Carrier" products were not available for purchase at the time the stores visited.

[9] Plaintiff is selling "Classic Washable Poster Markers," "Permanent Poster Markers," and "Bright Washable Poster Markers," in packaging that is different than that of its "Poster Markers" attached to its Complaint and Memoranda  (McCallion Decl., ¶ 3, Ex. A.)

| ArtSkills' Complaint (Ex. 6) & Memoranda | Wal-Mart, New Mexico; Wal-Mart, Pennsylvania; Wal-Mart Minneapolis[10] |
|---|---|
|  | |

The significant variations in ArtSkills' packaging undercuts any possible claim that consumers view ArtSkills' packaging as source identifying (*i.e.*, distinctive). Given that ArtSkills' packaging as shown on its website and on sale in the marketplace is substantially different from what ArtSkills presented to the Court, it is unfortunate that ArtSkills failed to properly advise the Court of all the facts. Moreover, it is remarkable that ArtSkills nonetheless alleges that its packaging has been used consistently over the years, is distinctive, and identifies ArtSkills as the source of its products.

> **3.    Even if ArtSkills Consistently Used the Packaging it Presented to the Court, it Would Not Be Distinctive Trade Dress**

Product configuration can never be inherently distinctive. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 211 (2000) ("In the case of product design… we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs–such as a cocktail shaker shaped like a penguin–is intended not to identify the source, but to render the product itself more useful or more appealing." *Wal-Mart Stores, Inc*. 529 U.S. 205, 213.

---

[10] Madera Decl., Ex A.; Halkowski Decl., Ex. A; Leviton Decl., Ex A.

Product packaging on the other hand may be, but will certainly not always be, inherently distinctive. *Id*. at 212. To be inherently distinctive, trade dress that is based merely upon product packaging must act as a source identifier.

ArtSkills, by its own admission, incorporates the design of its products—a predominant feature visible through the clear façade of its packaging—into what it claims is its protectable trade dress. As a result, ArtSkills attempts to protect a rather ambiguous combination of its product design and product packaging. Because ArtSkills relies heavily upon the look of the products themselves, its claim must be assessed under the standards governing product configuration claims. Thus, no inherent distinctiveness can be assumed, and ArtSkills must prove its alleged trade dress—in its entirety—has acquired secondary meaning. As explained by the Supreme Court while addressing alleged trade dress that could not be easily classified as strictly product packaging or strictly product design, "courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning. The very closeness will suggest the existence of relatively small utility in adopting an inherent-distinctiveness principle, and relatively great consumer benefit in requiring a demonstration of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros., Inc*., 529 U.S. 205, 215 (2000).

Even if the Court ignores that ArtSkills' product designs are the predominant feature of its packaging, ArtSkills' alleged trade dress is not inherently distinctive under the lower standard governing pure product packaging. To be clear, "[n]ot every single word, phrase, design or picture that appears on a label or in an advertisement qualifies as a protectable… trade dress. Rather, to create… trade dress rights, a designation must be proven to perform the job of identification: to identify one source and distinguish it from other sources. If it does not do this, then it is not protectable as … trade dress…." McCarthy § 3:3.

Here, many of the elements featured on ArtSkills' packaging are commonplace design elements such as a swoosh, an arc, swirls, and stars, which are merely decoration, and not source identifying. Similarly, the portions of the products displayed in ArtSkills' packaging are either commonplace shapes such as an arrow or heart, or simply variously colored letters or numbers – none of which are distinctive. "[W]hen trade dress is claimed to exist in a commonplace design which may well be viewed by consumers as mere decoration, proof of a likelihood of confusion may require more in the way of evidence than a mere hypothetical argument that it is the product design which will confuse consumers." McCarthy § 8:15; *see also American Basketball Ass'n v. AMF Voit, Inc.*, 358 F. Supp. 981 (S.D.N.Y. 1973), *aff'd without op.*, 487 F.2d 1393 (2d Cir. 1973), *cert. denied*, 416 U.S. 986 (1974) (red, white and blue panels on basketball held merely decorative and ornamental); *Major Pool Equipment Corp. v. Ideal Pool Corp.*, 203 U.S.P.Q. 577 (N.D. Ga. 1979) (design on swimming pool liner held merely aesthetically pleasing ornamentation*); Damn I'm Good, Inc. v. Sakowitz, Inc.*, 514 F. Supp. 1357 (S.D.N.Y. 1981) (ornamental word message on bracelet); *In re F.C.F., Inc.,* 30 U.S.P.Q.2d 1825 (T.T.A.B. 1994) (holding a picture of roses on cosmetic containers to be purely ornamental and decorative).

To the extent ArtSkills seeks protection for the colors depicted on its packaging, color is never inherently distinctive. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162-163 (1995); *Wal-Mart*, 529 U.S. at 206. Moreover, ArtSkills' failure to identify any evidence that its colors indicate the source of its products renders such colors unprotectable as a matter of law.

ArtSkills' *only* support for its claim that its trade dress is inherently distinctive is its own conclusory statement that its packaging is "unique and memorable." (Pl. Mem. p. 9). This alone does not constitute competent evidence of inherent distinctiveness. ArtSkills failed to provide any persuasive evidence, such as affidavits from customers, retailers, or distributors, that relevant

consumers identify ArtSkills' trade dress to signify ArtSkills as the source of the products at issue.

    **4.**    **ArtSkills' Claimed Trade Dress Has Not Acquired Secondary Meaning**

    "Secondary meaning exists when [a trade dress] 'is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services.'" *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc*., 214 F.3d 432, 438 (3d Cir.2000) (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc*., 589 F.2d 1225, 1228 (3d Cir.1978)).   To establish secondary meaning, "a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product, rather than the product itself."  *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 850 n.10 (1982). *See also Freixenet, S.A., et al. v. Admiral Wine & Liquor Co., et al*., 731 F.2d 148 at 152 (3d Cir.1984); *Scott Paper Co.*, 589 F.2d at 1228. "When the primary significance of the trade dress to a consumer is in designating not the product but its producer, the trade dress has acquired secondary meaning."  *Ideal Toy Corp. v. Plawner Toy Mfr. Corp*., 685 F.2d 78, 82 (3d Cir.1982).

    Various factors are probative in determining whether a trade dress has acquired secondary meaning: "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion."  *Commerce Nat'l Ins. Servs., Inc*., 214 F.3d at 438.  ArtSkills must establish secondary meaning in the trade dress at the time and place that RCP began use of its trade dress  -- that is, at least as early as September 2008. *See Scott Paper Co.*, 589 F.2d at 1231.

Not only does the burden of proof rest upon ArtSkills, but proof of secondary meaning entails vigorous evidentiary requirements. *Ideal World Marketing, Inc. v. Duracell, Inc*., 15 F.Supp.2d 239, 245 (E.D.N.Y.1998). ArtSkills has set forth no evidence that its trade dress has acquired secondary meaning, now or before September 2008 when RCP commenced sales of its trade dress. Instead, ArtSkills states only that it "has sold its products since early 2005 and sells its products to more than 40,000 stores." (Pl. Mem. p. 11.) Such a vague statement fails to identify whether any of the products ArtSkills has sold over the years since 2005 include the products now at issue, fails to explain specifically the form of packaging in which the products were offered for sale, and fails to identify how many units of any such products have been sold. ArtSkills' so-called "evidence" of secondary meaning in no way satisfies the vigorous evidentiary requirements of a secondary meaning analysis and fails as a matter of law.

Indeed, ArtSkills' apparent overhaul of the appearance of its product packaging, detailed above, undermines its claim of acquired distinctiveness. When a party varies the display, or discontinues use of its trade dress, secondary meaning is essentially impossible to prove. *Al-Site Corp. v. VSI Int'l, Inc*., 174 F.3d 1308, 50 U.S.P.Q.2d 1161 (Fed. Cir. 1999) (finding no secondary meaning where plaintiff discontinued use of the design for two years prior to defendant's appearance on the market and where plaintiff changed its color coding trade dress from time to time). Thus, no evidence supports ArtSkills' claim that its poster board accessory product packaging, or any component thereof, has acquired secondary meaning such that it identifies a single source.

### 5.   ArtSkills' Purported Trade Dress is Functional

To succeed on the merits, ArtSkills must also demonstrate that its alleged trade dress is nonfunctional. *TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 29 (2001) ("[T]rade dress protection may not be claimed for product features that are functional."). "In a

civil action for trade dress infringement under this Act for trade dress not registered on the

principal register, the person who asserts trade dress protection has the burden of proving that the

matter sought to be protected is not functional."  15 U.S.C. § 1125(a)(3).  ArtSkills failed to meet

its burden of proving the non-functionality of its alleged trade dress.

A functional feature is one that is essential to the use or purpose of the device, affects the

cost or quality of the device, or provides a non-reputation related advantage.  *TrafFix Devices,*

*Inc.,* 532 U.S. 23, 32.  ArtSkills claims that its packaging is non-functional (Pl. Mem. p. 14), yet

seeks to protect the shape and size, and "general dimensions" of its packaging.  (Demsky Decl. ¶

8; Pl. Mem. p. 19.)  The shape and size requirements and "general dimensions" for the product

packaging at issue are dictated by retailers' requirements for shelving and displaying products.

Poster board accessories are sized and fitted specifically to meet retailers' needs.  (Repecki Decl.

¶ 21.)  Similarly, the clear plastic display portions of each of ArtSkills products serve the

obvious, and crucial, function of showing the prospective purchaser precisely what is being

offered for sale.  Given the competitive need to make these products in a certain size to satisfy

retailers' demands, the overall shape and size of the packaging at issue is functional and not

protectable.

### 6.    There Is No Likelihood of Consumer Confusion

"[A] plaintiff may prevail in a trade dress infringement action only if it shows that an

appreciable number of ordinarily prudent consumers of the type of product in question are likely

to be confused as to the source of the goods."  *Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50

F.3d 189, 200 (3d Cir.1995).  There is no evidence that an appreciable number of consumers are

likely to be confused with respect to the source of the parties' products.  The Third Circuit has

adopted what are commonly referred to as the *Lapp* factors to determine likelihood of confusion.

*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir.1983).  The *Lapp* factors are: "(1) the

degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength

of the owner's mark; (3) the price of the goods and other factors indicative of the care and

attention expected of consumers when making a purchase; (4) the length of time the defendant

has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in

adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not

competing, are marketed through the same channels of trade and advertised through the same

media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the

relationship of the goods in the minds of consumers because of the similarity of function; (10)

other facts suggesting that the consuming public might expect the prior owner to manufacture a

product in the defendant's market, or that he is likely to expand into that market." *Id*.[11]

### (a)    Similarity of Appearance

ArtSkills comparison of the parties' respect products is misleading given that ArtSkills'

packaging is constantly changing and its product line apparently continues to be undergoing a

material overhaul.  (Madera Decl, Ex. A; McCallion Decl., Exs. A-C; Halkowski Decl., Ex. A;

Leviton Decl., Ex. A; McCracken Decl., Ex. A.)

Moreover, there are a number of significant design elements in RCP's packaging that are

obviously distinct from those of ArtSkills.  RCP's packaging is predominantly orange and white,

not green and blue like ArtSkills' packaging.  RCP's packaging features a geometric background

pattern that does not remotely resemble anything on ArtSkills' packaging.  The orange

background of RCP's line of products is noticeably distinctive and sets it apart from third party

products.  (Demott Decl, ¶. 2.)  Most importantly, RCP's registered and widely-used ROYAL

---

[11] RCP focuses its analysis on the most material *Lapp* factors, namely factors 1-6.

BRITES trademark is prominently displayed on both the front and back of the packaging (where it is displayed twice). (Demott Decl., ¶2; Repecki Decl., ¶ 19.)

Indeed, the difference in the actual product packaging becomes readily apparent when the underlying products are set aside:



Moreover, in addition to prominently displaying its ROYAL BRITES trademark on the front of all of its packages, RCP also identifies its trade name, address, phone number, and website on the back of its packaging.  (Repecki Decl. ¶ 19.)  "The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the container, package, wrapper, or label of the manufacturer's or trader's name ... [and when] that is done, there is no basis for a charge of unfair competition."  *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444-45 (Fed. Cir.1984).  This factor favors RCP.

### (b)      The Lack of Strength of ArtSkills' Alleged Trade Dress

The stronger the trade dress, the greater the likelihood there will be consumer confusion when a second comer adopts a substantially similar trade dress. *Versa Prods. Co*., 50 F.3d at 203 ("Strength includes both 'distinctiveness on the scale of [trade dresses]' and 'commercial strength, or marketplace recognition.'").  For the reasons noted above, ArtSkills' claimed trade dress is not inherently distinctive, is merely decorative, and functional, does not act as a source identifier, and has not acquired distinctiveness.  Moreover, ArtSkills has failed to set forth any

evidence that its purported trade dress actually is recognized by purchasers as source-identifying. This factor favors RCP.

(c)      **Attention Expected of Customers**

The parties' retailer and distributor customers spend significant time and attention reviewing the products at issue herein prior to making any final purchasing decisions. The sales process in the parties' industry involves many in-person meetings with retail buyers, during which vendors such as ArtSkills and RCP, display and explain their product lines to profession buyers. (Repecki Decl. ¶¶ 3-7.) For example, last year at the 2008 ECRM show, RCP presented its poster board accessories product line, among others, to Kmart as part of a general line review. As is customary for a large account, Kmart considered a number of sales proposals for similar products, including a proposal from ArtSkills. After assessing its available options during the course of follow-up meetings occurring over several months, in November 2008, Kmart ultimately committed to purchasing poster boards and accessories from RCP, and RCP's products were on Kmart's shelves no later than June of 2009. (Repecki Decl. ¶ 14.) The manner in which sales and purchases of the parties products is conducted eliminates any chance of confusion by retail customers.[12]

With regard to end-consumers in stores looking at the products at issue, as noted above, ArtSkills' and RCP's poster board accessory products are not compared side-by-side. Thus, regardless of how much attention a customer in a store gives to the products at issue, they will not be confused by reviewing the two companies' products side-by-side. Moreover, no such evidence has even been alleged, much less proffered, by ArtSkills.

---

[12] Moreover, for the purposes of the motion for a temporary restraining order, in which ArtSkills seeks to prevent RCP from showing its products at the ECRM show and in meetings with retail buyers, the only relevant consumers are the sophisticated retailer buyers.

**(d)      Factors 4 & 6: The Length of Time Without Evidence of
Actual Confusion / Evidence of Actual Confusion**

There is no evidence of actual confusion in this case.  As noted above, as to end-consumers, ArtSkills concedes no evidence exists of any such confusion.  As to retail buyers, ArtSkills' claims that it presented "strong evidence" via the Declarations of Brent Hawkins and the Bradford H. Demsky simply do not withstand scrutiny.

First, the purported reiteration of Mr. Hawkins' conversation with a Kmart buyer is inadmissible hearsay.[13]  (Hawkins Decl., ¶ 3.)  Until the actual declarant can be presented for a deposition and the facts are otherwise examined via discovery, this statement is not competent evidence.  Further, even if Mr. Hawkin's reiteration was admissible, the only implication of the statement purportedly made by the Kmart buyer is that the buyer believed Kmart already sold a line of poster board accessories.  The purported reiteration of Mr. Demsky's conversation with an unidentified "sales representative" is also inadmissible hearsay.  (Demsky Decl., ¶ 14.)  Moreover, the unidentified representative's alleged statement, even if admissible, would not constitute evidence of trademark confusion, as the sales representative recognized both ArtSkills and RCP's respective packaging.  Inquiries regarding a possible relationship between entities do not constitute evidence of actual trademark confusion.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) ("Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion.  Indeed, such inquiries are arguably premised upon a lack of confusion between the products such as to inspire the inquiry itself."); *Duluth News-Tribune v. Mesabi Publ'g Co*., 84 F.3d 1093, 1098 (8th Cir. 1996) (noting

---

[13] "Evidence of actual confusion is sometimes introduced through the testimony of employees of plaintiff as to misdirected letters, phone calls, enquiries as to connection with defendant, and the like. The evidentiary problem is one of the hearsay nature of such testimony."  McCarthy § 23:15.

that inquiries about an affiliation indicate that customers are aware of different product sources). *See also* <u>Restatement Third, Unfair Competition</u> § 23, comment c (1995) ("Evidence of inquiries by customers as to whether the plaintiff and the defendant are associated, however, may not establish the existence of actual confusion if the nature of the inquiries indicates that consumers perceive a difference between the designations and are skeptical of the existence of a connection between the users."). Thus, ArtSkills has not set forth any evidence of actual trademark confusion.

The fact that there is no evidence of actual confusion on the end-consumer level is unsurprising, because, as noted above, retailers typically carry a poster board accessory product line of one company. (Repecki Decl., ¶ 4.) Accordingly, when end-consumers purchase such products, the products of ArtSkills and RCP are not featured in the same store. The manner in which the parties' sell their respective product lines all but renders the likelihood of "point of sale confusion" non-existent. Moreover, because a retailer is likely to carry a poster board accessory line from only one company, what drives the purchase at the ultimate point of sale to the consumer is the need for the product itself, not the packaging or any point-of-sale comparison with competing products.

RCP's products have been sold for a significant length of time, and there is no evidence of actual confusion. The Court may infer that the continued sale and marketing of RCP's products is not likely to cause confusion. *Versa Prods. Co. v. Bifold Co*., 50 F.3d 189, 205 (3d Cir. 1995) ("If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future."). This factor also favors RCP.

**(e)      Intent of RCP In Adopting The Mark**

The relevant inquiry under this factor is whether there is evidence of RCP's intent to confuse customers.  Courts do not focus on the defendant's intent to mimic products that are not protected by any patents or other intellectual property.  Rather, the assessment is whether RCP intended to confuse.  *Versa Prods. Co.*, 50 F.3d at 205.  ArtSkills has set forth absolutely no evidence that RCP intended to confuse consumers into buying its products.  Further, RCP has explained that the colors featured on its product line were chosen to complement RCP's related line of poster board products.  (Repecki Decl. ¶¶ 19-20.)   Given that, among other things, RCP's packaging used a completely different color-scheme and prominently featured its ROYAL BRITES registered trademark, there clearly was no intent by RCP in this case to confuse any customer.  (*Id.*)  This factor favors RCP.[14]

Indeed, "[o]ne primary purpose of the Lanham Act is to foster fair competition."  *Versa*, 50 F.3d 189, 207.   Where product configurations are concerned, the Third Circuit has cautioned that courts need to "especially wary of undermining competition [because] [c]ompetitors have broad rights to copy successful product designs when those designs are not protected by (utility or design) patents.  It is not unfair competition for someone to trade off the good will of a product, it is only unfair to deceive consumers as to the origin of one's goods and thereby trade off the good will of a prior producer."  *Versa*, 50 F.3d 189, 207. (citations omitted).

ArtSkills' only purpose is to deflate its competition.  In addition to its failure to even properly plead its case, ArtSkills has failed to demonstrate that its trade dress is distinctive or

---

[14]  There is an even higher standard regarding intent in the product configuration context, where the Third Circuit has held that "a defendant's intent weighs in favor of a finding of likelihood of confusion only if intent to confuse or deceive is demonstrated by clear and convincing evidence, and only where the product's labeling and marketing are also affirmatively misleading."  *Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd.,* 50 F.3d 189, 208 (3d Cir. 1995).

nonfunctional and has further failed to demonstrate that RCP's trade dress is likely to cause consumer confusion.  Consequently, ArtSkills has failed to establish a likelihood of success on the merits of its infringement claims.

**B.     ArtSkills' Own Actions Demonstrate the Lack of Irreparable Harm to ArtSkills**

"An unreasonable delay in seeking an injunction negates the presumption of irreparable harm."  *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 582 (E.D. Pa. 2005). ArtSkills' own actions demonstrate that it will not be irreparably harmed absent the entry of a temporary restraining order prohibiting RCP from showing products at the 2009 ECRM show. RCP displayed these very same products at the 2008 ECRM show.  ArtSkills admits that it was made aware of RCP's products nearly a year ago, and even made a low-level contact to an RCP regional sales manager about RCP's packaging at around that same time, and yet, ArtSkills then let the issue die and did nothing to voice its concerns to relevant officers at RCP's corporate offices.  (Demsky Decl. ¶ 14; Repecki Decl. ¶ 13.)  Moreover, before this suit was filed, RCP's products had been on major retailers' shelves for months, including offered for sale across the country in Kmart stores.  (Repecki Decl., ¶ 14.)  ArtSkills' inexcusable delay in pursuing its alleged claims severely undermines its allegations of irreparable harm requiring emergency relief.

**C.     The Balance of Harms Decisively Favors RCP**

As ArtSkills readily admits, the ECRM sales show is critical to RCP's business. (Demsky Decl. ¶¶ 3-5.)  This show provides RCP its best and most important opportunity to present products to, and forge new relationships with, retailers, and RCP invests tens of thousands of dollars in the ECRM show each year, as it is the primary means to introduce its products, and is where retailers make their purchasing decisions for the following year.  (Repecki

Decl. ¶¶ 7-8.)  The consequences of RCP being prevented from presenting these products at ECRM would be severe:  the considerable time, effort, and expense RCP has devoted to ECRM 2009 would be lost, RCP would be foreclosed from selling its products to certain retailers through 2010, and the resulting impact on RCP's revenue through 2010 would be nothing less than substantial.  (Repecki Decl. ¶¶ 7-8, 16.)

ArtSkills claims that any harm to RCP is minimal because "RCP only recently introduced" its products.  (Pl. Mem. p. 26.)  That simply is not true.  RCP introduced these products at last year's ECRM show and has been selling them since that show.  ArtSkills pays lip service to the notion that it is not seeking to enjoin RCP's sales of the actual products, all the while knowing that an injunction preventing RCP from displaying its packaging at ECRM may well effectively prevent RCP from selling these products to certain retailers through 2010. (Demsky Decl. ¶ 7.)

Conversely, the only "harm" ArtSkills could possibly face absent the grant of a temporary restraining order is competition for these products in the market.  Moreover, a denial of the temporary restraining order simply maintains the status quo that has been in place since September of last year.  Also, any relevant sales of the accused products are, of course, subject to ArtSkills claim that it is entitled to damages.

> **D.    The Public Interest Consideration Weighs in Favor of Competition**

The public interest is served by competition in the marketplace.  *See, e.g., Wal-Mart Stores, Inc., v. Samara Bros.*  529 U.S. 205 (2000).  If RCP is prevented from showing its products to retailers, retailers will have fewer choices when evaluating which poster board accessory line to offer to its customers.  Eliminating such competition is not in the public's interest.

## VI.    CONCLUSION

Trade dress protection is not intended to create patent-like rights in a product's design. *Shire US Inc. v. Barr Laboratories Inc.* 329 F.3d 348, 353 (3d Cir. 2003) (citing *Eppendorf Netheler Hinz GmbH v. Ritter GmbH*, 289 F.3d 351, 355 (5th Cir. 2002). Thus, "trade dress protection, must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix*, 523 U.S. 23, 29. Put simply, ArtSkills has fabricated an "emergency" and now wastes the Court's time and resources to further its charade. For this reason and for all of the reasons noted above, ArtSkills' motion should be denied in its entirety.

Respectfully submitted,

Dated:  September 8, 2009                          FISH & RICHARDSON P.C.

By:  /s/ *Thomas L. Halkowski*
    Thomas L. Halkowski (I.D. No. 88854)
    222 Delaware Avenue, 17th floor
    P.O. Box 1114
    Wilmington, DE 19899-1114
    halkowski@fr.com
    T: (302) 652-5070
    F: (302) 652-0607

    Gregory Madera
    225 Franklin Street
    Boston, MA 02110-2804
    T: 617-542-5070
    F: 617-542-8906

Attorneys for Defendant
ROYAL CONSUMER PRODUCTS, LLC

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 8th day of September 2009, the attached

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY**

**RESTRAINING ORDER** was filed with the Clerk of Court using ECF and is available for

viewing and download. I also certify that the following individuals were served via e-mail and

first class mail.

Andrew B. Katz
Chernow Katz, LLC
721 Dresher Road, Suite 1100
Horsham, PA 19044
akatz@chernowkatz.com

J. Derek Vandenburgh
Jonathan D. Carpenter
Carlson, Caspers, Vandenburgh & Lindquist, P.A.
225 South Sixth Street, Suite 3200
Minneapolis, MN 55402
dvandenburgh@ccvl.com
jcarpenter@ccvl.com

*Attorneys for Plaintiff*
*STEVEN B. GOLDEN ASSOCIATES, INC.*
*d/b/a ARTSKILLS*


*/s/ Thomas L. Halkowski*
Thomas L. Halkowski (I.D. No. 88854)